C. T. GOBEN, Appellant, v. DES MOINES ASPHALT PAVING COMPANY, Appellee.

**NEW TRIAL:** Grounds—Instructions—Omission of Defensive and Supported Issue. New trial is necessarily proper when based on the established ground that the court failed to submit a defensive issue (*e. g.*, accord and satisfaction) as to which the testimony makes a jury question.

Headnote 1: 29 Cyc. p. 785.

*Appeal from Union District Court.*—H. H. CARTER, Judge.

OCTOBER 18, 1927.

An action by a subcontractor against the defendant, to recover for grading incident to a public improvement in the city of Creston, Iowa. The case was tried to a jury, the trial resulting in a verdict in favor of the plaintiff. Motion for a new trial was filed by the defendant, which was sustained by the court; and from the adverse ruling on this motion plaintiff appeals.—*Affirmed.*

*Higbee & McEniry* and *W. W. Bulman,* for appellant.

*George A. Johnston* and *Walter L. Stewart,* for appellee.

ALBERT, J.—On or about the 6th day of August, 1923, defendant entered into a written contract with the city of Creston to pave certain streets in said city. Later, plaintiff and defendant entered into an oral contract, by which plaintiff was to do certain grading incident to this contract, preparatory

to paving, and as to this contract there is a dispute as to two elements. Plaintiff claims that he was to be paid by the "superficial yard," and defendant claims that it was to be by the "cubic yard." Plaintiff claims that the agreed price was 55 cents per superficial yard, and the defendant, that it was to be 40 cents per cubic yard. Plaintiff further claims that, according to the terms of this verbal contract, the defendant was to have the civil engineer of said city make a rough estimate every two weeks of the yardage removed by the plaintiff, and that plaintiff was to be paid, on a basis of this estimate, every two weeks. This element of the contract is squarely denied by the defendant.

It appears that, after plaintiff had been working for a little over four weeks, he quit work, and refused to proceed further. He then brought a suit against the city in the sum of $10,000, which was later compromised, and the case against the city dismissed, with prejudice. He then brought this action against the contractor, claiming judgment for the sum of $3,-752.95, with interest.

The defendant, in an amended and substituted answer, admits that the estimates of the city engineer show that the plaintiff removed 7,131.4 superficial yards, but asserts that the depth of this excavation was only 7½ inches, which gave a natural yardage of 1,485.7 cubic yards. Defendant further admits that for this work it would be indebted to the plaintiff in the sum of $594.28, except for the matters set up in the counterclaim, in which it alleges that the work that the plaintiff did was done so negligently and carelessly that the defendant was compelled to have it done again, and resurfaced by others, at an expense of $361.25; that there were 5,380 cubic yards of earth that plaintiff failed to remove, under his contract, and defendant was compelled to employ others to do this work, for which it was compelled to pay the sum of 50 cents per cubic yard; and that the excess cost to the defendant by reason thereof was $538, which, added to the cost to the defendant of resurfacing the work already done by the plaintiff, made a sum of $919.25, from which defendant deducts the amount which it confesses it owes plaintiff, leaving a balance due the defendant of $304.97, for which it asks judgment against the plaintiff.

Later, by way of another amendment during the trial, the

·defendant pleaded the former suit by this plaintiff against the city of Creston, the compromise and settlement thereof, and its ratification of the same as accord and satisfaction. The case was fully submitted and argued to a jury, which returned a verdict in favor of the plaintiff, allowing his claim in full; also allowing the defendant the sum of $361.25, which it claimed was necessary, to perfect the work done by the plaintiff.

During the trial, evidence was introduced, touching the matters claimed to be in accord and satisfaction, but the court refused to submit this question to the jury. This is one of the grounds of the motion for a new trial. The court overruled all other grounds stated in the motion for a new trial, but granted a new trial on this ground. The plaintiff appeals from the action of the court in sustaining the motion for a new trial on this ground. Defendant did not appeal.

What constitutes an accord and satisfaction, and that such plea is available under the practice in this state, is fully elaborated in the cases of *Perin v. Cathcart*, 115 Iowa 553; *Jacobs v. Jacobs*, 130 Iowa 10; *Rustler Realty Co. v. Swecker*, 134 Iowa 679; *Sparks v. Spaulding Mfg. Co.*, 158 Iowa 491; *Warfield-Pratt-Howell Co. v. Richou*, 190 Iowa 809. One of the necessary elements of a complete accord and satisfaction is that it must be shown that the creditor accepts it as such; and the intention of the parties must govern. *Shull, Gill, Sammis & Stilwill v. McCrum*, 179 Iowa 1232; *Zabawa v. Osman*, 202 Iowa 561. That this is only a jury question, when there is conflict in the evidence, see *Frame v. Cassell*, 187 Iowa 1194. In the light of these settled rules on this question, we now turn to the record.

To understand the question here involved, it seems from the record that there are two classes of grading: one referred to as "excess" grading, which means the excavation of a street to a point that corresponds to the surface of the paving when completed, or the filling in of the street, thereby raising the surface thereof to a point so that, when the paving is placed thereon and completed, the top surface thereof will be at grade. Another term used is "subgrading." By this is meant the excavation and removal of that part of the existing street that will be occupied by the paving when completed. Ordinarily, excess grading is paid for by the city, and subgrading by

the party who has the contract for placing the pavement.
As heretofore noted, after certain of this work had been done,
plaintiff Goben brought an action against the city, the sum-
mary of his petition being that the city had a large amount of
grading to be done, preparatory to the laying of the pavement
on various streets therein, and had advertised for bids there-
for; that he met with the city council, and at said meeting it
was proposed by members of the city council, the mayor, and
city engineer, that plaintiff should have the entire job of grad-
ing, and removing approximately 25,000 yards of dirt; that
plaintiff offered to remove this dirt at the rate of 40 cents per
yard, provided that it were what is known in grading parlance
as "black dirt," but, if it were different, and more difficult to
remove, then the price was to be increased.  He says that the
city accepted this contract, and agreed with him on these terms,
and that a written contract was to be later made, which was
never done.  He further attaches to said petition an itemized
statement of the time, the number of men, horses, and mules,
and machinery employed, amount paid out by him, and the
work done.  The city answered, alleging, in substance, that it
was only liable for "excess" grading, and not for all grading
done by the plaintiff; says that it was understood at the time
that the total amount of excess grading was approximately 6,-
000 yards; denies that it was in any way liable to the plaintiff
for any other grading than that designated as "excess" grad-
ing; alleges that it is only indebted to plaintiff in the sum of
$499.28, subject, however, to an offset for a feed bill of $134.75.

In the case between Goben and the city of Creston, the
matters therein involved were adjusted between the city and
Goben, and the case was marked "Settled and Dismissed with
Prejudice."  Goben, on the trial of the case at bar, testifies,
with reference to his former case against the city, that, when he
had the conference with the city council before he started the
action, he claimed that the city owed him money for moving all
of this dirt, and for all of these contracts.  He claimed that the
city was liable to him for the excavation of the dirt for the Des
Moines Asphalt Paving Company, and also for work done by
one Aiken, who had a contract for putting in the curb and gut-
ter.

"I claimed at that time that the city was liable to me for all of this grading. The city guaranteed it to me."

George A. Johnson, attorney for the city, who was called by plaintiff with relation to this settlement, testified that the amount paid to Goben was in full settlement of his lawsuit against the city, and that the same was dismissed on the record, with prejudice, and marked "settled."

Taking this testimony in connection with the allegations of Goben's petition in his action against the city,—from which latter it might be inferred that he was claiming that the city was liable for all the grading,—we think that a question of fact was here made for the jury, because Goben, at one place in his testimony, says that he was only claiming from the city for "excess" grading. In the *Zabawa* case, supra, which is the last expression of this court on this proposition, we said:

"It is undoubtedly true that, where a debtor tenders a sum on the condition that it be accepted in discharge of the whole debt, the creditor is bound to either reject the amount offered or accept it on such condition; and if, under such circumstances, he accepts the sum tendered, there is an accord and satisfaction."

In the light of the whole record touching this question, we think that the court should have sent this question of accord and satisfaction to the jury. Its ruling, therefore, setting aside the verdict and for a new trial on account of this error was right.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.