C. T. GOBEN, Appellee, v. DES MOINES ASPHALT PAVING COMPANY, Appellant.

No. 39601.

APRIL 5, 1929.

REHEARING DENIED SEPTEMBER 30, 1929.

*George A. Johnston* and *Walter L. Stewart*, for appellant.

*Higbee & McEniry* and *W. W. Bulman*, for appellee.

EVANS, J.—The transaction under review was incidental to a paving project in course of construction in the city of Creston in 1923. The defendant was the paving contractor, which was engaged in the performance of its contract with the city. The plaintiff may be designated as a grading subcontractor. Under the paving contract between the defendant and the city, certain grading was to be done by the city and certain other grading was to be done by the contractor. It was the undertaking of the city to bring its street to the grade of the surface of the proposed pavement. In the parlance of contractors, this is known as a "top grade." It represents the elevation or level of the surface of the pavement when completed. All excess dirt above such elevation was to be removed by the city, preparatory to the execution of its contract by the paving contractor. There is another species of grade, known in the parlance of a contractor as a "subgrade." This represents the elevation or level of the bottom or base of the pavement when constructed. The difference or space between the two grades represents the thickness of the pavement when constructed. It was the undertaking of the paving contractor to take the street when it was reduced by the city to the "top grade," and to do the additional grading necessary to reduce it to the "subgrade." The cubic yardage of the space between the "top grade" and the "subgrade" is equal to the cubic yardage of the pavement, which in this case was about eight inches thick. The plaintiff first contracted with the city to do its grading and to bring its streets to the "top grade" at 40 cents per cubic yard, with extra pay for overhaul in excess of 500 feet. Shortly after he had entered upon the performance of such contract, the defendant, through its president, Burrows.

engaged him to do the subgrading for it at the same time. A verbal agreement was entered into between them at that time. The vital issue in the case is the price fixed in such agreement. The plaintiff avers that the price agreed upon was 55 cents per superficial yard,—that is to say, per square yard of surface. The defendant contends that the price agreed upon was the same as that provided in the contract between plaintiff and the city,—40 cents per cubic yard. The plaintiff proceeded with the execution of both contracts at the same time, bringing the street to the "subgrade," instead of "top grade." His work covered an area of about 6,800, square yards. The actual amount of dirt moved in the subgrading, according to the evidence, was 910 cubic yards. These figures present the measure of the dispute. The plaintiff filed his petition in two counts. Upon the first count, he pleaded the express contract, and claimed recovery thereon at the agreed price. In the second count, he sued upon a *quantum meruit,* and claimed the same price as the reasonable value of the services. Later, he withdrew the second count, and tried and submitted his case upon the first count only. The plaintiff pleaded also that he failed to perform fully the contract set up by him, and pleaded justification of such failure in that the defendant had breached it and failed to perform its part. He averred that, pursuant to the contract, the defendant was to pay him the estimated value of the work done at the expiration of two weeks, and that the defendant wholly failed to perform such agreement. The plaintiff offered no evidence of reasonable value. The defendant did introduce evidence on that subject. This was received, however, only as bearing on the dispute between the parties as to what the contract price was. This evidence showed the reasonable value of moving dirt for the purpose of grading a street or highway as ranging from 26 cents to 40, and possibly 50, cents per cubic yard. The argument here has been devoted largely to the merits of the litigation and to the alleged extravagance and exaggeration of plaintiff's claim. If cubic yardage was the unit upon which the price was predicated, then the plaintiff's claim cannot exceed five or six hundred dollars; whereas, if the square yard was the unit, the chasm between the parties becomes very wide. On the basis of cubic yardage, the plaintiff is claiming at the rate of more than $4.00 per yard. This is perhaps a sufficient indication of the general character of the record. It will suffice, also, to an

understanding of the error at the trial which we are about to point out.

The case, as presented to us, is involved in some confusion by the construction which the plaintiff puts in his brief here, upon his pleading in the court below. This attitude may be indicated by the following short quotation from his brief:

"Under this proposition, appellant complains of the theory on which the court submitted the case to the jury, claiming that the suit is on the contract, therefore full performance must be shown, in order to recover. The case was tried on Count 1 of the petition. *That count is nothing less than a petition in quantum meruit.*" (The italics are ours.)

In the foregoing statement, the appellee-plaintiff is gravely in error. If his contention at this point were correct, he would fail for want of any evidence in support of a *quantum meruit*. He introduced no testimony on the question of reasonable value. As already indicated by us, his "Count 1" was upon the contract. His count upon the *quantum meruit* was expressly withdrawn. The court properly submitted the case as upon an express contract. The failure of plaintiff to introduce evidence of reasonable value was consistent with his count upon the express contract. This same attitude appears to have been taken by plaintiff in the court below, and in dealing with it, the court became involved in error. Instruction 7 given by the court was as follows:

"The plaintiff admits that he quit said work before it was completed, but claims that, under his contract with the defendant, the defendant was to pay him every two weeks while said work was in progress, upon estimates to be made by the city engineer of Creston, and that the defendant failed to have such estimates made, and failed to pay plaintiff any money thereon, and that, because of such failure on the part of defendant, the plaintiff was compelled to abandon such work before its completion. As to this you are instructed: That the burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant agreed to have such estimates made every two weeks and to make payment thereon, and that the defendant failed to have any estimate made on said work or to pay plain-

tiff therefor. If you so find from the evidence, then plaintiff would be justified in abandoning said work, and would not be liable in damages to the defendant for any failure to complete said contract. *But unless you do find from a preponderance of the evidence that the defendant agreed to have such estimate made every two weeks and to make payment to plaintiff thereon as claimed by plaintiff, then plaintiff would be entitled only for the amount of work done by him at the price which you find from the evidence the defendant had agreed to pay plaintiff for such work, less any damages the defendant may have sustained by the failure of the plaintiff to complete said work, if any, if you find that plaintiff abandoned said work, and was not justified in so abandoning it.*"

The italics are ours, and they indicate the point of departure of the instruction from the correct statement of the law.

In an action upon a contract to recover the contract price for services rendered, it is incumbent upon the plaintiff to plead and to prove either substantial performance of the contract on his part or that the failure of performance on his part was justified. In this case, the plaintiff did not plead performance on his part, but did plead justification for failure of performance. If the failure of performance was justified, then the plaintiff was entitled to recover his contract price for the work done. On the other hand, if the failure of performance was not justified, then the plaintiff could recover nothing upon his contract. In such case, he could recover upon a *quantum meruit,* notwithstanding the failure of performance without justification. But the measure of his recovery would be the reasonable value of his services, *not exceeding the contract price,* and subject to offset for damages, if any, sustained by the defendant by reason of the breach of contract. *Pixler v. Nichols,* 8 Iowa 106; *Corwin v. Wallace,* 17 Iowa 374.

The function of the contract in such a case is to operate in favor of the defendant as a limitation upon the maximum of plaintiff's recovery in the event of proof that the reasonable value exceeded the contract price. But all this is quite hypothetical. Inasmuch as the plaintiff submitted his case solely upon the issue of an express contract, he was bound to justify his failure of performance in order to recover at all; and failure to so justify.

entitled the defendant to a verdict. The italicized portion of Instruction 7 purported to allow recovery notwithstanding the unjustifiable breach of the contract by the plaintiff. Such recovery could not be had, except upon the *quantum meruit*. Plaintiff had expressly withdrawn his count upon the *quantum meruit*, and in effect elected to stand upon the express contract. The instruction was, therefore, a clear departure from the pleadings, and was erroneous for that reason.

For this error, the judgment must be—*Reversed.*

STEVENS, FAVILLE, KINDIG, WAGNER, and GRIMM, JJ., concur.

MORLING and DE GRAFF, JJ., dissent.

MORLING, J. (dissenting).—I do not concur in the interpretation placed by the majority upon Count 1 of the petition. or upon the issues or theory upon which the case was tried, exceptions taken, or errors assigned, nor do I concur in the discussion of the law applicable to the right of recovery upon a contract for breach thereof, or to recover upon *quantum meruit*, or in the abstract correctness of such discussion. In my view of the record, Instruction No. 7, as applied to the issues and the theory upon which the case was tried, is correct.

Count 1 of the petition sets out a verbal contract, made August 6, 1923, by which plaintiff agreed to reduce the grades of streets, as provided in specifications, and by which defendant agreed to pay 55 cents per superficial yard therefor. It alleges that, as a part of the agreement, plaintiff should immediately commence the work, and in two weeks defendant should obtain from Devoe, city engineer, a rough estimate of the amount of dirt removed, and that defendant should then pay on the basis of the estimate; "that at the date of said contract the plaintiff advised the defendant that he was financially unable to complete the contract unless payments were made on said rough estimate each two weeks during the time said work was being performed. That the defendant then and there contracted and agreed with plaintiff that defendant would pay him for such work as estimated, and pay him on such basis every two weeks, and that, relying on said contract, the plaintiff immediately thereafter, at great expense to himself, commenced said work in compliance

with said agreement, and with the consent and approval of defendant, and continued with said work until on or about the 20th day of September, 1923. That the defendant failed and neglected to obtain said estimate from the city engineer, and failed and neglected to pay this plaintiff within two weeks after said work was commenced, as by said contract provided; and on the 20th day of September, 1923, the plaintiff was unable to complete the said contract, on account of lack of funds, and on account of the failure of the defendant to comply with its said contract, and in not obtaining said estimate and making said payments within two weeks from the time said grading work was commenced. That thereafter, and on October 15, 1923, the said P. K. Devoe reported in writing to the plaintiff and defendant that the total amount of superficial yards so reduced to grade on said paving to be 7,131.4 superficial yards, and that all of said work was performed by plaintiff, excepting about 50 per cent'' on streets named; ''that, under the terms of said contract, the defendant is indebted to plaintiff in the full sum of $3,- 752.95,'' with interest. The answer contains no denial in terms specific or general. It admits the making of a verbal contract on the date named, but states that the contract was that defendant should pay the plaintiff the price agreed upon between plaintiff and the city for the grading that plaintiff was then doing for the city, $.40 per cubic yard; that plaintiff entered upon the work, but abandoned it before completion; that the amount removed, according to the estimate of the city engineer, was 7,131.4 superficial yards, which would give a cubic yardage of 1,485.7. ''Defendant admits that, under said contract, there would be due and owing to this plaintiff from the defendant the sum of $594.28, except for the matters and facts set out in the defendant's counterclaim hereinafter set out.'' In its counterclaim defendant alleges that the dirt removed by plaintiff under the contract was so negligently done that it was necessary to pay out for correcting plaintiff's mistakes $361.25; that there were 5,380 cubic yards of earth which plaintiff failed to remove, and which it was necessary, after the work was abandoned, to employ another contractor to remove.

''That, because of the failure of the plaintiff to carry out the contract, as aforesaid, this defendant was required to pay,

for the purpose of the completion of the contract, the sum of $2,690, which was $538 in excess of the price at which plaintiff agreed to remove said dirt.

"That defendant states that, because of the failure of the plaintiff to properly perform the work which he should have performed under the terms of said contract, that defendant was damaged in the sum of $361.25, as hereinabove set forth, and because of the failure of the plaintiff to carry out the terms of said contract by removing all of the earth agreed to be removed under the terms of said contract, this defendant was damaged in the sum of $538, making a total amount of damage suffered by this defendant because of the failure of the plaintiff to carry out the terms of said contract, the sum of $919.25.

"That, after the deduction from defendant's total damage the sum which would have been due the plaintiff from the defendant, had he properly performed the work under said contract which was in fact performed by him, there is a balance left in favor of the defendant in the sum of $304.97.

"Wherefore, defendant prays that the petition of the plaintiff be dismissed at plaintiff's costs, and that this defendant be given judgment against the plaintiff for the sum of $304.97, together with interest from date."

By reply, which contains a general denial, plaintiff admits that he did not bring all of the work to grade, but alleges that he brought to grade all sought to be recovered for; that defendant is estopped to allege that plaintiff did not bring all the streets to grade, in that defendant in the contract agreed, at the end of each two weeks during the progress of the work, to pay plaintiff 55 cents per superficial yard for the two weeks prior to the pay days, and that defendant would have Devoe make a rough estimate of such work every two weeks; that defendant failed to make the payments, knowing that plaintiff did not have the means with which to carry on the work without the payment, and that, with intent to defeat plaintiff's recovery for labor performed, it failed to make any of the payments figured on the rough estimate.

It will be seen that the plaintiff does not claim to recover upon the contract as for performance thereof, but plainly says that he did not fully perform, and excuses his non-performance

by alleging, in substance, prevention by defendant, in that it was known and understood that plaintiff was unable to complete the contract without the payments, and that defendant agreed to make the payments, and afterwards refused to do so, thereby preventing performance by plaintiff, and with intent to defeat plaintiff's recovery. It will be noticed that defendant in terms admitted "that, under said contract, there would be due and owing" to plaintiff $594.28, except for defendant's counterclaim. The counterclaim is based on the contract. It alleges defendant's version of the contract, and alleges plaintiff's breach and the consequent necessity of defendant's completion of the contract at an expense of $538 in excess of the contract price, alleges damage of $361.25 because of plaintiff's breach, and total damage of $919.25. The counterclaim plainly alleges that, after deduction from defendant's damage of the sum which would be due plaintiff, had he properly performed the work which was in fact performed, the balance left is $304.97, for which defendant asks judgment.

The case, therefore, went to trial on undisputed allegations that a contract was made, was performed in part, and unperformed in part; that there was a sum owed by defendant to plaintiff for part performance. The issues were: 1. What was the contract? 2. What was the amount owed plaintiff (it being conceded that some amount was owed)? 3. Was plaintiff's failure to fully perform due to his fault or to defendant's fault? 4. If non-performance was plaintiff's fault and breach, then what was the amount of defendant's damage?

It being ascertained on these issues what plaintiff was entitled to receive (some amount being conceded), and it being ascertained whether anything, and what amount, defendant was entitled to receive, the verdict would be either for the full amount which plaintiff was entitled to receive, or for the difference between that amount and the amount to which defendant was entitled, and in favor of the party entitled to the greater amount. The language of the court in *United States v. Behan*, 110 U. S. 338, 346, is quite applicable.

"It is to be observed that, when it is said in some of the books that, where one party puts an end to the contract, the other party cannot sue on the contract, but must sue for the work

1122

actually done under it, as upon a *quantum meruit,* this only means that he cannot sue the party in fault upon the stipulations contained in the contract; for he himself has been prevented from performing his own part of the contract upon which the stipulations depend. But surely, the willful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract, for which an action will lie for the recovery of all damage which the injured party has sustained. The distinction between those claims under a contract which result from a performance of it on the part of the claimant, and those claims under it which result from being prevented by the other party from performing it, has not always been attended to. The party who voluntarily and wrongfully puts an end to a contract and prevents the other party from performing it, is estopped from denying that the injured party has not been damaged to the extent of his actual loss and outlay fairly incurred.''

The principal question on the pleadings, aside from the terms of the contract, was whether plaintiff was justified in stopping performance. Whether one party to a contract is relieved from further performance by the conduct of the other depends upon the terms of the contract and the circumstances. *Quarton v. American Law Book Co.,* 143 Iowa 517, 523, 525; 5 Page on the Law of Contracts (2d Ed.), Section 3008. In the *Quarton* case, this court said:

''It would be intolerable to hold that, if one party repudiates, renounces or abandons his contract, the other may not treat the renunciation or repudiation as putting an end to it.''

In this case it clearly appears from plaintiff's petition (and there is evidence sustaining the allegation) that plaintiff was unable to go on with performance unless biweekly estimates were made and paid; that it was so understood at the time the contract was made; that with that understanding the defendant agreed to have such estimates and payments made; that defendant broke its contract in this respect, and thereby, as a known and foreseen result, contracted against by defendant, prevented plaintiff from completing performance. On these allegations, therefore, defendant was guilty of such breach as justified

plaintiff in not completing performance. *Woodruff Co. v. Exchange Realty Co.*, 21 Cal. App. 607 (132 Pac. 598). Compare *Thompson & Son v. Brown*, 106 Iowa 367. As applicable to the law of contracts, defendant's breach, under the facts pleaded, prevented complete performance by plaintiff and, within the meaning of the law on that subject, rendered further performance by plaintiff impossible. 5 Page on the Law of Contracts (2d Ed.), Sections 2667, 2918 *et seq.*, and authorities above cited. It discharged the contract, so far as concerned full performance on plaintiff's part. Idem. Defendant was not discharged from liability by plaintiff's non-performance. 5 Page on the Law of Contracts (2d Ed.), Section 2922 *et seq.* Plaintiff was, therefore, entitled, as he did by bringing this action, to treat the contract as broken by defendant, and to sue thereon for breach. Idem, Section 2923; *McDermott v. Mahoney*, 139 Iowa 292, 307; 13 Corpus Juris 649, 651, 693.

In an action for such breach, plaintiff would be entitled to recover the contract price for the work done according to the contract, and to damages (if alleged) sustained by being prevented from completing performance. 17 Corpus Juris 857. In such an action, plaintiff was entitled to recover at the contract rate for the work done. Idem; Iowa cases post. See *Porter v. Whitlock*, 142 Iowa 66; *Kehoe v. Mayor and Council of Rutherford*, 56 N. J. Law 23 (27 Atl. 912); *Siebert v. Leonard*, 17 Minn. 433; *Davis v. Thurston County*, 119 Wash. 414 (205 Pac. 840); *Parr v. Parr*, 173 Minn. 253 (217 N. W. 107); *Inland Const. Co. v. City of Pendleton*, 116 Ore. 668 (242 Pac. 842); *Hill v. Wilson*, 123 Ore. 193 (261 Pac. 422, 424); *Cousin v. Mason*, 78 Cal. App. 111 (248 Pac. 299).

Moreover, in the case before us it must be emphasized that the defendant in its pleadings does not deny that plaintiff is entitled to recover compensation for the work done, but admits that he is entitled thereto, though only at the rate claimed by the defendant to be the contract rate. The defense is by way of counterclaim for damages resulting from plaintiff's abandonment of the work. The instruction complained of merely informs the jury of the conditions which, under the law, were a prerequisite to plaintiff's right to abandon the work without subjecting himself to liability for damages.

Plaintiff might have sued on the *quantum meruit* (*Thomp-*

*son & Son v. Brown,* 106 Iowa 367), but he was not compelled to adopt that remedy.

As to the work done, the contract furnishes the measure of damages. Cases *supra* and *post.* This was acknowledged by defendant before the action was commenced. In a letter dated September 4, 1924, defendant wrote to plaintiff's attorney:

"Mr. P. K. Devoe, City Engineer of Creston, on October 15, reported to us that Mr. Goben partially graded certain streets, superficial square yards of grading for paving work amounted to 7,131.4 square yards, which equals 1,387- cubic yards of dirt excavation. Mr. Goben was to remove this dirt as per contract he had with the City of Creston which called for a consideration of $.45 per cubic yard for grading up to 500 ft. free haul with overhaul consideration of $.03 per yard per 100 ft. He also reports the work of grading the streets was not over 50 per cent completed, which I know for a fact. We afterwards, having to spend quite a sum of money in straightening up the streets. 1,387- cubic yards at $.45 amounts to $624.15. Our charge against Mr. Goben for regrading the streets, amounts to $361.25. We will be glad to send you a check for $262.90 with the understanding you send us a release * * *"

Instruction No. 7 is as follows:

"The plaintiff admits that he quit said work before it was completed, but claims that, under his contract with the defendant, the defendant was to pay him every two weeks while said work was in progress, upon estimates to be made by the city engineer of Creston, and that the defendant failed to have such estimates made, and failed to pay plaintiff any money thereon, and that, because of such failure on the part of defendant, the plaintiff was compelled to abandon such work before its completion. As to this you are instructed: That the burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant agreed to have such estimates made every two weeks and to make payment thereon, and that the defendant failed to have any estimate made on said work or to pay plaintiff therefor. If you so find from the evidence, then plaintiff would be justified in abandoning said work, and would not be liable in damages to the defendant for any failure to complete

said contract. But unless you do find from a preponderance of the evidence that the defendant agreed to have such estimate made every two weeks and to make payment to plaintiff thereon as claimed by plaintiff, then plaintiff would be entitled only for the amount of work done by him at the price which you find from the evidence the defendant had agreed to pay plaintiff for such work, less any damages the defendant may have sustained by the failure of the plaintiff to complete said work, if any, if you find that plaintiff abandoned said work and was not justified in so abandoning it.''

The last paragraph of this instruction tells the jury that, unless defendant did agree to have the estimates and payments made every two weeks, plaintiff would be entitled to recover only for the amount of work done at the contract price, less defendant's damages. In other words, the court charged, in accordance with the pleadings and with the evidence, that, if plaintiff was excused from completing the work, he would not be liable in damages; but if he was not excused, then, while he would be entitled to recover for the amount of work done at the contract price (as was conceded), such recovery would be lessened by the amount of the defendant's damages. The exception to this instruction is that it was contrary to the law and to the evidence, and misleading. The exception proceeds:

''The issues as joined * * * was upon contract and in law plaintiff cannot recover without proving (1) the contract substantially as alleged; (2) entry upon the work and substantial performance of the contract; (3) a substantial performance of the work under the contract as far as the plaintiff claims to have gone; (4) that plaintiff was justified in abandoning the contract by some breach on the part of the defendant; (5) that there was some amount due plaintiff under the contract. The court has, by this instruction, allowed a recovery on *quantum meruit* and for so much of the work as was done, even though the same was not done according to contract, even though there was no breach of the contract by the defendant, even though there was no offer on the part of the plaintiff to complete the work, and even though there was no justifiable abandonment by the plaintiff, and even though the plaintiff has not substantially performed the contract as set out in his said petition. This is shown by that part of the

instruction reading as follows:'' (Here follows a quotation from the instruction which omits the last very material clause, namely, ''less any damages the defendant may have sustained by the failure of the plaintiff to complete said work, if any, if you find that plaintiff abandoned said work and was not justified in so abandoning it.'')

The exception, thus omitting this very qualifying clause, proceeds to state that the language is erroneous ''because it permits the jury to find for plaintiff even though there was no substantial performance upon his part, even though there was no justifiable abandonment on his part, and even though there was no offer upon his part to perform. This is contrary to the law in this state, the law being that plaintiff, before he can recover at all under the issues as joined in this case, must prove, by preponderance of the evidence: First, a contract; second, a substantial compliance therewith on his part, or an offer to comply; third, that he abandoned the same justifiably,— and this justifiable abandonment on his part is a question of fact for the jury to determine, under the facts and circumstances.''

It seems plain that none of these grounds of exception is good.

Concerning the subject of *quantum meruit*, plaintiff pleaded an express contract, and proved an express contract. He did not plead full performance. He pleaded, and his evidence tended to prove, part performance on his part and breach on the part of defendant. In pleading damages, he did not in terms allege that the services performed were of the reasonable value of $3,752.95, but he pleaded the contract, the number of yards excavated pursuant to it, and the contract price per yard. He therefore pleaded that which was at least evidence of the reasonable value of the services performed, and claimed to recover that value. It seems to me clear that plaintiff might, in Count 1, have added the ultimate fact shown by, or conclusion from, such evidence: namely, that the services performed under the contract up to the time of defendant's breach were of the reasonable value of $3,752.95. (Plaintiff argues that the amount was arrived at on basis of the total yardage, 7,131.4, less one half of the yardage of the block not completed.) It seems to me equally clear that such addition would have been mere tautology, which

would have added or detracted nothing from the fact, or what was already in Count 1. The defendant was in no wise misled or prejudiced by the omission. The case is not one of pleading in terms an express contract and seeking to recover for full performance thereof, or proving an express contract and part performance. It is not one of pleading an express contract and proving an implied contract and a *quantum meruit* based upon implied contract. If there was any implied contract, it was that which the law would imply from the facts pleaded. Plaintiff was not required to plead the law or legal conclusions. A legal implication of liability to pay for the services rendered arises from the facts pleaded. The contract pleaded does, *prima facie* at least, fix the value of the services. No attack was made on plaintiff's pleading. If attack had been made, he would have been permitted to amend to conform to the proof. Count 2, which was withdrawn, alleges that plaintiff, at the instance and request of the defendant, undertook to do, and did, the work necessary to reduce the streets to grade, and that the services performed were reasonably worth $3,752.95. All of this, in substance and in the form of ultimate facts or evidence, is pleaded in Count 1. Section 11177, Code of 1927, reads:

"No variance between the allegations in a pleading and the proof is to be regarded as material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

In fact there is no variance. Defendant's claim in effect is merely that the petition should have alleged in so many words that the reasonable value of plaintiff's services was $3,752.95.

Plaintiff is seeking to recover his damages resulting from defendant's breach and consequent discharge of an express contract. He is not seeking to recover upon any implied contract, other than such as would be the legal implication from the facts pleaded: namely, the express contract, part performance, defendant's breach, excusing full performance, and plaintiff's consequent justifiable failure to fully perform. On those facts, the plaintiff would be entitled to recover the reasonable value of the services rendered. The reasonable value was set out in the form of a contract which fixed the value. Defendant was not "actually misled * * * to his prejudice in maintaining his * * * de-

fense upon the merits.'' In *Murphy v. Williamson*, 180 Iowa 291, defendant counterclaimed for damages for breach of the contract of employment alleged in the petition. This court said:

"It is further urged that the defendant in his counterclaim pleaded that the services rendered by him were rendered *under the contract*. It is argued, therefore, that this allegation, of itself, would forbid proof of a *quantum meruit* as a basis of damages. It appears that this point was first sustained by the trial court. Later, after an amendment, the ruling was withdrawn, and the evidence was permitted to stand. We think the later ruling was clearly correct, and would have been correct in the first instance. The services *were* rendered under the contract, without any dispute. It was for that reason that the defendant was entitled to recover damages for breach of the contract on the part of the plaintiff. The fact that one party breaches a contract after it has been partly performed by the other party does not preclude such other party from pleading such performance, nor from proving his damages for such breach upon a basis of *quantum meruit*."

See, also, *Emeny Auto Co. v. Neiderhauser*, 175 Iowa 219, 222. This is in accordance with general principles. In *Sussdorff v. Schmidt*, 55 N. Y. 319, plaintiff claimed $50,000 as agreed compensation for services. Defendant urged that, as the complaint was upon a contract for a specific sum, plaintiff could not recover as upon a *quantum meruit*. The court, in holding the point untenable, said:

"1. The complaint contains sufficient averments to enable the plaintiff to recover the value of the services rendered, without reference to the allegation of an agreed compensation. 2. At most, it was only a variance between pleading and proof, which might be disregarded unless it misled the defendants, which was not pretended. (Code, Sec. 169.) 3. This objection was not taken at the trial. The exception to that part of the charge authorizing the jury, if they found that no specific sum was agreed upon, to find the value of the services, was too general to raise this question. The attention of the court should have been called to the point, as, if valid, it might then have been obviated by an amendment."

See, also, *United States v. Behan,* 110 U. S. 338.

In *Inland Const. Co. v. City of Pendleton,* 116 Ore. 668 (242 Pac. 842), quoting from *Burgess v. Helm,* 24 Nev. 242, 249 (51 Pac. 1025, 1026), though speaking with reference to complete performance, it is said:

" 'Under a complaint on a *quantum meruit* for services, where a specified contract is proved, fixing the price for services, the stipulated price becomes the *quantum meruit* in the case. *Fells v. Vestvali,* 2 Keyes 152. If the plaintiff was entitled to recover at all, it was on the ground that the services had actually been rendered; and, after complete performance of an express contract, there is no reason why a recovery may not be had upon a complaint on *quantum meruit* (Id.), when the opposite party to the action has not been misled in the defense.' "

The contract had a much greater function than "a limitation upon the maximum of recovery." Plaintiff need not introduce other evidence of such reasonable value. Of course, the contract may be of such a nature, or the part performance may be such a departure from the contract, that the contract cannot be used as a basis for recovery; but in the case here, the contract is for work and labor,—for grading at an agreed price per cubic yard, as defendant claims, or per superficial yard, as plaintiff claims. In such a case, though the contract is broken by the fault of the employee, the contract price is at least prima-facie evidence of reasonable value of the work actually performed. *Pixler v. Nichols,* 8 Iowa 106; *McClay v. Hedge,* 18 Iowa 66, 68. It is said in *Corwin v. Wallace,* 17 Iowa 374, 378:

"We find no proof whatever of any extra work being done, or any change in the manner of doing the work which would increase the expense; hence there was no occasion to go beyond the terms of the contract to estimate the value of that which was done. * * * They [the jury] were expressly, and yet very properly, instructed by the court that, in fixing the value of the labor and materials furnished, they were to be governed by the *contract price,* so far as the same may be traced."

We may interpolate that the law is well settled in this state that one who performs work and labor under an express contract which he refuses to fully perform, may, nevertheless, recover

the reasonable value of his services, subject to the right of the employer, ''if he so elect, to put the breach of contract in defense, for the purpose of reducing the damages, or showing that nothing is due, and to deduct what it will reasonably cost to secure a completion of the whole service, as well as any damage sustained by reason of the non-fulfillment of the contract. If, in such case, it is found that the damages are equal to, or greater than, the value of the labor performed, and that the employer, having a right to the performance of the whole contract, has not received any beneficial service, the plaintiff is not entitled to recover.'' *Pixler v. Nichols,* 8 Iowa 106.

See, also, *McClay v. Hedge,* 18 Iowa 66, 68; *Corwin v. Wallace,* 17 Iowa 374; *Byerlee v. Mendel,* 39 Iowa 382; *Thompson & Son v. Brown,* 106 Iowa 367; *Porter v. Whitlock,* 142 Iowa 66. Of course, one who breaks his contract may not recover unless he has conferred some substantial benefit that was within the contemplation of the parties in making the contract. He cannot compel the innocent party to accept as beneficial something that was not within the contemplation of the parties in making the contract. See *Miller v. Mason City & Ft. D. R. Co.,* 132 Iowa 412; *Thompson & Son v. Brown,* 106 Iowa 367.

But, as I view the case, the whole discussion of the subject of recovery on *quantum meruit* is academic. Defendant admitted plaintiff's right to recover. It sought to recoup against plaintiff's admitted right defendant's damages sustained from plaintiff's alleged breach of the contract. Instruction No. 7 laid down the law governing this counterclaim, and in respect to (1) the plaintiff's claim that his failure to fully perform was occasioned by defendant's previous breach, (2) defendant's claim that plaintiff abandoned the contract without justification,—that is, breached it, and (3) it told the jury that, if defendant had not breached the contract, plaintiff would only be entitled to pay for the work actually done at the agreed price, less defendant's damages. In other words, that (as was admitted) plaintiff was entitled to recover at the contract rate, whatever that rate was found to be, but his recovery, if his abandonment was not justified, would be lessened by the amount of defendant's damages. No point is made that the instruction in its terms only required the jury to lessen the damages, but omitted reference to an af-

firmative verdict in favor of defendant for the excess of its damages over amount owed plaintiff.

In *Byerlee v. Mendel*, 39 Iowa 382, 386, it is said, after quoting from *Corwin v. Wallace*, 17 Iowa 374, and citing *McClay v. Hedge*, 18 Iowa 66, 68:

"The petition states the contract and seeks to recover the reasonable value of the service performed by his son under this contract. This he may do; but, under the case of *Corwin v. Wallace*, supra, the measure of his recovery is confined to the price agreed upon by the parties, under the contract as proved on the trial, and the defendants are entitled to set off the damages sustained by reason of the non-performance of the agreement. If the contract, as alleged by the defendants, is proved by the testimony of the plaintiff, his recovery must be measured by its terms, after deducting the damages, if any, which the defendants have suffered by reason of its non-fulfillment. Of course, the right of the defendants to recover damages at all must rest upon the fact that the plaintiff's son quit their service before the expiration of the term thereof, without their fault. *Pixler v. Nichols*, supra."

Nor does the fact that a special contract is referred to in the petition necessarily preclude a recovery upon a *quantum meruit*. 40 Cyc. 2840.

Nor was there failure of proof or variance. The making of a contract, as alleged, for the particular work was admitted; but the rate of compensation as alleged by the plaintiff was, by setting up the contract according to defendant's version of it, denied, and the alleged provision for biweekly estimates and payments was disputed. It being assumed that plaintiff introduced no evidence, the court would have to find the making of the contract as alleged by plaintiff, but would, on the pleadings taken together, have to find that the rate of compensation and amount due plaintiff was as admitted by the answer, rather than as pleaded and not proved by plaintiff, and would have to find also on the pleadings, the plaintiff having offered no evidence, that the agreement did not incorporate a provision for biweekly estimates and payments. Non-performance being alleged by plaintiff, and his alleged justification not being proved, defendant would be entitled to such damages as he might be able to prove. Defendant

1132

did offer evidence of its damages. If plaintiff had offered no evidence, the judgment, on the theory of the pleadings and trial, would have been for defendant for its damages, if proved, subject to amount owed plaintiff. Plaintiff did offer evidence. The jury gave him the full amount claimed. The jury, therefore, found the rate of compensation to be as alleged by plaintiff, and found also that the agreement for biweekly estimates and payments was made, as plaintiff claimed. The verdict, therefore, entirely eliminated as untrue defendant's allegations as to the rate of compensation and defendant's denial of the agreement for biweekly estimates. The jury must have found that the contract was precisely as alleged by the plaintiff. The jury did not allow a recovery upon the basis of the reasonable value of plaintiff's services; did not find for plaintiff on the *quantum meruit*. It found the contract as alleged by plaintiff, and based its verdict on that contract. We have, therefore, the further answer to the alleged error in instruction that, on the found facts, the instruction was without prejudice.

As I look at the case, therefore, plaintiff has properly pleaded an express contract, partial performance thereof, breach by defendant, excusing further performance and discharging the contract, so far as concerns full performance. Furthermore, even though his action were upon *quantum meruit*, plaintiff was entitled to go to the jury upon the question of the reasonable value of his services. Instruction No. 7, as it seems to me, is a correct statement of the law, and applicable to the issues and the theory upon which the case was tried; and the instruction was without prejudice.

As to the evidence, I may merely say that, while I think the majority opinion unduly emphasizes some features and makes no reference to countervailing evidence, the case was for the jury. I think the judgment should be affirmed.

DE GRAFF, J., joins in this dissent.